IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JORGE TORO-VELEZ., *et al.*,

   **Plaintiff,**

      v.

MICHAEL J. ASTRUE
Commissioner of Social Security, *et al.*,

   **Defendants.**

CIVIL NO. 13-1155 (JAG)

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

    Pending before the Court is an action under Section 205(g) of the Social Security Act, 42 U.S.C. §405(g), to obtain judicial review of a final decision of the Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Jorge Toro-Velez's ("Toro-Velez" or "Plaintiff") application for disability insurance benefits filed on April 7, 2009. The Commissioner found that Toro-Velez was not disabled under §§ 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act and capable of performing his past relevant work as an eligibility worker. After careful review by this Court, the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

**FACTUAL BACKGROUND**

    Toro-Velez was born on January 16, 1954. Ex. 4E. He obtained a college degree in 1978 and has worked as a hotel employee, short-order cook, driver, toll collector, and eligibility worker. TRANHR at 45-48; Ex. 4E at 250. At the alleged onset date of disability, January 3, 2008, Plaintiff was 53 years old.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

On April 7, 2009, Toro-Velez filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. Docket No. 19 at 2. Both applications were denied on September 11, 2009 and, upon reconsideration, on February 24, 2010. Exs. 2B and 8B. On March 23, 2010, Toro-Velez filed a written request for a hearing, which was effectively held via video conference on April 6, 2011 before ALJ Stephen R. Woody ("ALJ"). Exs. 12B and 16B. ALJ presided over the hearing from Falls Church, VA, while Plaintiff appeared in Orlando, FL. Vocational expert Silvio S. Reyes ("Reyes") also appeared.

On August 5, 2011, ALJ issued an unfavorable decision, finding that Toro-Velez was not disabled from the alleged onset date of disability through the date of his decision for the purposes of both Title II and Title XVI applications. ALJDEC at 17-34. Regarding Plaintiff's Title II application, ALJ determined that his earnings record shows that he has acquired sufficient quarters of coverage to remain insured through December 31, 2009 and that he must establish disability on or before that date in order to be entitled to a period of disability. Id. at 23. He also established that Toro-Velez meets insured status requirements through December 31, 2009. Id. Concerning the Title XVI application, ALJ followed a five-step sequential process established by the Social Security Administration in 20 C.F.R. §§ 404.1520(a) and 416.920(a) for determining whether an individual is disabled and made the following findings about Plaintiff's case: (1) He has not engaged in substantial gainful activity; (2) he severely suffers of status post thoracotomy, repaired left chest wall, diabetes mellitus, hypertension, left-knee osteoarthritis, and obesity; (3) his medically determinable impairment of sleep apnea is not severe; (4) he does not have a severe impairment or combination of severe impairments that meets or medically

equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) he has the residual functional capacity ("RFC") to perform sedentary work, which would adequately address his symptoms and severe impairments; (6) he is able to communicate in English; (7) his doctor's opinions are generally inconsistent with the overall record and her own treatment records; and, finally, (8) he is capable of performing his past relevant work as an eligibility worker since it does not require the performance of activities precluded by his RFC. Id. at 25-29. Toro-Velez filed a request for review of ALJ's decision with the Appeals Council on September 2, 2011, which was subsequently denied on January 3, 2012. ACDENY at 1-3. Accordingly, ALJ's decision became the Commissioner's final decision. Id. at 1. On June 18, 2014, Plaintiff filed a request of judicial review of the Commissioner's final decision, to which the Commissioner replied with a memorandum of law on August 19, 2014. Docket Nos. 19 and 21.

## STANDARD

Judicial review in Social Security cases is limited to determining whether the findings of the Commissioner are supported by substantial evidence. 42 U.S.C. § 405(g). The Court must ascertain whether ALJ employed the proper legal standards and reached conclusions upon a suitable quantum of evidence. Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).

The Commissioner's findings must be upheld "if a reasonable mind, reviewing the evidence as a whole, could accept it as adequate to support a conclusion". Irlanda v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). These findings are not conclusive when they stem from ignored evidence, misapplication of the law or judgment of matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The Court must defer to

ALJ's interpretation of the record. Lizzotte v. Sec'y of Health and Human Servs., 654 F.2d 127, 128 (1st Cir. 1991)

In order for claimant to be entitled to disability insurance benefits, he must meet insured status requirements and prove that he is disabled within the meaning of the Social Security Act. Disability is defined as "the inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. § 423(d)(1)(a).

A five-step sequential evaluation for adjudication of disability claims has been set forth by the Commissioner in 20 C.F.R. § 404.1520. The first step is assessing whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). "Substantial work activity" involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a) and 416.972(a). "Gainful work activity" is usually done for pay or profit. 20 C.F.R. §§ 416.1572(b) and 416.972(b). If the claimant engages in substantial gainful activity, he is not disabled. The second step is fixing upon whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c) and 416.920(c). To establish its severity, it must significantly limit an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, he is not disabled. The third step is determining whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520, 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. If it does not, the Commissioner must determine the claimant's RFC. The RFC is the

claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments; it specifies what the claimant can still do physically and mentally. 20 C.F.R. §§ 404.1520(e), 404.1545(a). The fourth step consists in evaluating whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(f) and 416.920(f). Past relevant work means work performed within the last fifteen years or fifteen years prior to the onset date of disability. If the claimant has the RFC to perform his past relevant work, he is not disabled. If the claimant is unable to perform his past relevant work, the Commissioner's five-step sequential evaluation proceeds to the fifth and final step. The final step is deciding whether the claimant is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g) and 416.920(g). If the claimant is able to perform other work, he is not disabled. If not, the burden shifts to Commissioner, who is responsible for proving that other work exists in significant numbers in the national economy that the claimant can perform —taking into account his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), and 416.960(c).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). The five-step sequential evaluation must be applied in making a final decision. Id.; see also Goodermote v. Sec'y of Health and Human Servs., 690 F.3d 5, 6-7 (1st Cir. 1982). The determination of the ultimate question of disability is for ALJ, not for the doctors or the courts. Lizzotte, 654 F.2d at 128.

Civil No. 13-1155 (JAG)                                                                                                6

## ANALYSIS

I.   Sleep apnea

Toro-Velez argues that ALJ erred by determining that his sleep apnea is not severe and by basing this determination on the requisite of twelve months of treatment or complaints necessary to show that the impairment is severe. 42 U.S.C. § 423(d)(5)(B). He brings forward Social Security Regulation ("SSR") 96-3p, which states: "If the adjudicator finds that [the claimant's symptoms] cause a limitation or restriction having more than a minimal effect on [his] ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe." SSR 96-3p, 1996 WL 374181 (Jul. 2, 1996).

The Commissioner stands by the requisite of twelve months of treatment or complaints to show the severity of an impairment and holds that Plaintiff's record does not reflect any treatment or complaints related to sleep apnea. Defendant also states that Toro-Velez maintains that his sleep apnea is a severe impairment based solely on his self-reported complaints presented at the hearing. TRANHR at 52. Finally, the Commissioner emphasizes that an impairment cannot be established on the basis of symptomatology alone and must be proven by "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 404.1529(b); SSR 96-4p, 1996 WL 374187 (Jul. 2, 1996).

This Court agrees with the Commissioner's arguments. Even in the case of ALJ being able to reach a conclusion without turning to Plaintiff's medical reports and stationed

exclusively on the effects of his symptoms, as SSR 96-3p proffers, the severity of Toro-Velez's sleep apnea would not be duly proven since ALJ expressly declared in his opinion that "[Toro-Velez's] statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible to the extent that they are inconsistent with the [RFC]". ALJDEC at 27. Likewise, ALJ properly asserts that, apart from a treating visit for obstructive sleep apnea in September 2009 (Ex. 10F), "the overall record does not document complaints or treatment related to obstructive sleep apnea." ALJDEC at 25.

## II. Obesity

Toro-Velez claims that ALJ failed to correctly assess his condition of overweight. He turns to SSR 02-1p, which points out that "the combined effects of obesity with other impairments may be greater than might be expected without obesity" and that "the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation. . . ." SSR 02-1p, 2002 WL 34686281 (Sep. 12, 2002).

Defendant cites to the same ruling, contending that there is no separate listing for obesity and that Plaintiff would satisfy the requirements of a listing only if he has another impairment that meets a listing, either by itself or in combination with his obesity.

ALJ did in fact inquire into the possibility of obesity being listed in combination with another of Toro-Velez's impairments, in direct compliance with SSR 02-1p, and drew the conclusion that Toro-Velez's impairments do not meet or equal a listing. ALJDEC at 26. Similarly, ALJ demonstrated that Plaintiff's overweight was wholly appraised in his RFC by assigning him to sedentary work and precluding any factors that did not address specific environmental and postural limits. ALJDEC at 28. Ultimately, Toro-Velez's most recent weight

measurement in the record is from August 2009; at the date of the hearing, information about his weight was nearly two years old. Ex. 8F.

### III. Other conditions

Plaintiff alleges that ALJ ignored his conditions of renal failure, loss of lung volume, left-ventricular hypertrophy, fractured ribs, lack of concentration, shortness of breath, pain, loss of equilibrium, fatigue, blurry vision, and nervousness. He understands that ALJ faltered at approaching these ailments when it comes to the RFC.

On the other hand, the Commissioner says that these conditions are unsubstantiated by the medical record, lack limiting symptomology, and have not been treated or complained of for a duration of 12 months or more. In addition, Defendant states that some of the ailments are just merely self-reported complaints by Toro-Velez during the hearing.

In effect, Plaintiff's renal failure was not shown to be continuing. At best, his record mentions it as a past condition in a report from September 2009. Ex. 10F. Furthermore, his primary care physician, Dr. Noris Franco, had observed no organ damage. Ex. 20F. Regarding loss of lung volume, Toro-Velez cites to nothing else but one report in the record, in which loss of lung volume is only an impression of a CT test. Ex. 11F. While Plaintiff cites to nowhere in the record that may show an affliction of left ventricular hypertrophy, one report from February 2009 points to mild left ventricular hypertrophy and two others from April 2001 and September 2009 indicate that his ventricle dimensions are in a normal state. Exs. 1F, 4F and 10 F. Concerning Toro-Velez's alleged rib fractures, he cites to a single June 2009 report that comments on fractures that are non-displaced and already healing. Ex. 11F. Lastly, Plaintiff brought forth no objective medical evidence to provide for the allegations of lack of

concentration, shortness of breath, pain, loss of equilibrium, fatigue, blurry vision, and nervousness and merely cites to his own declarations in the hearing. TRANHR at 51, 52, 53, and 56.

This Court agrees with ALJ's observation that the record contains "little in the way of pain complaints". ALJDEC at 27. Toro-Velez also avowed during the hearing to treating his pain with medically-recommended over-the-counter medications. TRANHR at 56.

IV. Past work

Plaintiff contends that his lack of concentration incapacitates him to perform the skilled level job that Reyes proposed and that ALJ did not reach a decision concerning his vocational potential in a clear and rational way. Moreover, he argues that ALJ did not provide any findings of fact in respect to his RFC and that the physical and mental demands of his past occupation were not considered.

Defendant responds that ALJ properly communicated the RFC to Reyes during the hearing and that Reyes testified that Toro-Velez's limitations were insufficient to prevent him from performing his past work. TRANHR at 58-65.

This Court reminds Plaintiff that ALJ had disregarded the credibility of his allegations regarding the limiting effects of his symptoms. ALJDEC at 27. A fluid and progressive series of steps in relation to Toro-Velez's RFC is present in ALJ's opinion, including a finding of facts as to the RFC itself, as to Reyes' testimony, and as of Toro-Velez's return to his past occupation. ALJDEC at 26, 28. "The vocational expert testified that someone with [Plaintiff's] residual functional capacity could perform the work of eligibility worker as the requirements of the job fit within above [the] RFC. Therefore, [Toro-Velez] is capable of performing his past relevant

work as an eligibility worker." ALJDEC at 29. Similarly, it was unnecessary for ALJ to proceed to the fifth step of the sequential evaluation process (whether the claimant is able to do any other work considering his RFC), which considers factors such as the claimant's age, education, and work experience and resulting potential of reinsertion into the work force, since Plaintiff was already found to be not disabled at the fourth step (whether the claimant has RFC to perform the requirements of his past relevant work). ALJDEC at 29.

## V. Dr. Franco

Toro-Velez demands that, contrary to what ALJ fixed upon, weight should be granted to the opinions of his primary care physician, Dr. Noris Franco, and that there are no contradictions between her findings and the record or within her own findings. In respect to Dr. Franco, he cites: "[t]hese [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations". 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). He also states that ALJ must give the opinion of a treating source controlling weight if he finds that the opinion is "well supported by medically accepted clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." Id.

On the contrary, Defendant disputes that the questionnaires provided by Plaintiff's physician are inconsistent with the overall record and her own treatment notes. He also argues that these reports contain unremarkable findings and, finally, that a compelling lapse of time occurred between his physician's opinions and the treatment she administered.

This Court cannot understand Toro-Velez's reasons for the significant time lapse between Dr. Franco's opinions and his treatment. On the one hand, Plaintiff's motives seem convoluted and are not clearly developed. On the other, ALJ has already considered that Dr. Franco's analysis was incompatible with the overall record. During judicial review of a disability claim, the courts must defer to ALJ's interpretation of conflicts in the record. <u>Lizzotte</u>, 654 F.2d at 128.

## CONCLUSION

A denial of Social Security disability benefits must be upheld in the absence of a legal or factual error. <u>Manso-Pizarro</u>, 76 F.3d at 16 (citing <u>Sullivan v. Hudson</u>, 490 U.S. 877, 885 (1989)). After a thorough review, this Court finds that ALJ's conclusion is supported by the evidence on the record. As such, ALJ's decision is AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2015.

s/ <u>Jay A. Garcia-Gregory</u><br>
JAY A. GARCIA-GREGORY<br>
United States District Judge